```
Doc ID:    001468170022 Type: GLR
Filed: 06/02/2006 at 08:19:00 AM
Fee Amt: $686.20 Page 1 of 22
Intangible Tax: $634.20
Douglas County Georgia
Cindy Chaffin Clerk Superior Court
BK 2369 PG 633-654
```

After Recording Return To:

Akomah & Associates, LLC
2759 Delk Rd.
Suite 2590
Marietta, GA 30067

CORETTA PELSEY

———————————————— [Space Above This Line For Recording Data] ————————————————

06-B-24
[Escrow/Closing #]                     [Doc ID #]

# SECURITY DEED
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 23, 2006 , together with all Riders to this document.
(B) "Borrower" is
MILLICENT TIEKU, A MARRIED MAN, AND SAMUEL ORKOH ASINOR

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
AMERICA'S WHOLESALE LENDER

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 11
VMP -6A(GA) (0005).01  CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291           Form 3011  1/01
CONV/VA





EXHIBIT B

BK PG
2369 634

DOC ID #: ████████████

Lender is a CORPORATION
organized and existing under the laws of NEW YORK                                . Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613                          .
(E) "Note" means the promissory note signed by Borrower and dated FEBRUARY 23, 2006    . The
Note states that Borrower owes Lender
ONE HUNDRED FORTY THOUSAND and 00/100

Dollars (U.S. $ 140,000.00          ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than MARCH 01, 2036        .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider  [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider          [X] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider               [ ] Biweekly Payment Rider       [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)
conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or
any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and
modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely
as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with
power of sale, the following described property located in the
                COUNTY              of              DOUGLAS                     :
        [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

BK PG
2369 635

DOC ID #:

Parcel ID Number: which currently has the address of

1026 SILVER MOON TRL, LITHIA SPRINGS

[Street/City]

Georgia 30122-3963 ("Property Address"):

[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

BK PG
2369 0642

DOC ID #:

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BK    PG
2369  0643

DOC ID #: 00012781140702006

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____          _____(Seal)
Unofficial Witness                MILLICENT TISKU                -Borrower

                                  _____(Seal)
                                  SAMUEL ORKOH ASINOR            -Borrower

                                  _____(Seal)
                                                                 -Borrower

                                  _____(Seal)
                                                                 -Borrower

**STATE OF GEORGIA,**                                County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,                                                   County
State of Georgia

BK    PG
2369  644

## SCHEDULE "A"

### DESCRIPTION OF PROPERTY

All that tract or parcel of land lying and being in Land Lot 576 of the 18th District, 2nd Section, Douglas County, Georgia , being Lot 124, Silver Creek Ranch Subdivision, Unit Five, as per plat recorded in Plat Book 22, Page 120, Douglas County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 1026 SILVERMOON TR according to the present system of numbering houses in Douglas County, Georgia.